UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DARIN ARGALL,

    Plaintiff,

v.

Case No. 2:16-cv-31
HON. TIMOTHY P. GREELEY

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
    _____/

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner).[1] Plaintiff Darin Argall filed an initial brief on October 21, 2016 (ECF No. 16) and a supplemental brief on November 7, 2016 (ECF No. 18). Defendant filed a response on November 22, 2016. (ECF No. 19.) Plaintiff did not filed a reply. The matter is now ready for a decision.[2]

Plaintiff alleges that he became disabled on August 6, 2012. On July 10, 2013, Plaintiff Darin Argall filed an application for disability insurance benefits under Title II of the Social Security Act. (ECF No. 7-2, PageID.52.) In his initial application for disability benefits, Plaintiff alleged that he was disabled because of "fractured ribs, separated clavicle, bulging discs,

---

[1] Pursuant Federal Rule of Civil Procedure 25(d), the caption in this case has been updated to reflect that Nancy A. Berryhill is now the Acting Commissioner of Social Security.
[2] Both parties consented to proceed before a Magistrate Judge. ECF No. 10.

separated left shoulder, damaged lungs, blood line through heart, damaged right hand and wrist, 2 hernia surgeries, chronic pain, difficulty turning neck or back, and learning disabilities." (ECF No. 7-4, PageID.118.) On October 15, 2013, Plaintiff's application was denied. (PageID.118.) On December 17, 2013, Plaintiff filed a Title XVI application for supplemental security income and a written request for an administrative hearing before an Administrative Law Judge (ALJ). (PageID.122.)

The ALJ held a hearing on September 10, 2015, in which Plaintiff was represented by a non-lawyer. (ECF No. 7-2, PageID.70.) At the hearing, Plaintiff testified that he was thirty-six years old and had a GED. (PageID.76.) He stated that he used to work as a mason and was injured at work on August 6, 2012. Plaintiff worked for three days after his injury, but could not continue to work because the pain was too severe. (PageID.76.) As a result of the injury, Plaintiff received an $80,000 workers compensation settlement. (PageID.77.) Since the injury, Plaintiff spends most of the day "watching TV or not doing a whole lot." (PageID.79.) Plaintiff tried physical therapy for a period of time, but it was not helpful. (PageID.85-86.) He testified that he struggles with performing daily tasks and can only walk one block, stand for one hour, or sit for one hour before needing breaks because of the pain. (PageID.91-92.)

In addition to Plaintiff's testimony, a vocational expert—Dr. Jacquelyn E. Wenkman—testified at the hearing. (PageID.95-98.) The ALJ asked Dr. Wenkman whether a person of the Plaintiff's age, education, and work experience could work as a mason with the following non-exertional limitations: no climbing ladders, ropes, or scaffolds; moderate exposure to moving machinery and unprotected heights; limited reaching with upper right extremity; and allowing ten percent of work day off task. (PageID.95-96.) Dr. Wenkman responded "no." (PageID.96.) However, Dr. Wenkman stated that a person with the same limitations could perform

light level jobs including: lobby attendant (87,000 positions); cafeteria attendant (225,000 positions); and machine tender (168,000 positions). (PageID.96.) In addition, Dr. Wenkman testified that a person with the same limitations could perform the following sedentary level positions: lobby or building attendant (17,000 positions); machine tending (22,000 positions); clerk (79,000 positions); and office helper (99,000 positions). (PageID.96.) Dr. Wenkman also stated that if the person was off task fifteen percent of the workday, the potential jobs would be eliminated. (PageID.96-97.)

On November 9, 2015, the ALJ issued a written decision denying Plaintiff's claim for benefits. (ECF No. 7-2, PageID.49.) The ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy given Plaintiff's residual functional capacity (RFC). (PageID.63.) Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, 20 C.F.R. § 404.1520(g), from August 6, 2012 to the date of the decision. (PageID.63.)

Plaintiff subsequently appealed to the Appeals Council, which denied his request for review on December 29, 2015. (ECF No. 7-2, PageID.25.) Plaintiff now seeks judicial review of the agency's final decision denying her request for disability benefits.

"Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This Court is not permitted

to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion). This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently. *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). At step one, the ALJ determines whether the claimant can still perform substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant's impairments are considered "severe." 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments meet or equal a listing in 20 C.F.R. part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, the ALJ determines whether the claimant has the residual functional capacity to still perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At step five, the ALJ determines whether a significant number of other jobs exist in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines Plaintiff is not disabled under any step, the analysis ceases and Plaintiff is declared as such. 20 C.F.R § 404.1520(a).

In this case, the ALJ correctly applied the five-step analysis. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 6, 2012, the alleged onset date. (ECF No. 7-2, PageID.54.)

At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease; degenerative joint disease, and status post left sternoclavicular joint sprain. (PageID.54.) The ALJ found that Plaintiff's chronic wrist pain was not a severe impairment because Plaintiff injured his wrist in 2011 and had returned to work as a mason with normal strength prior to the August 6, 2012, injury. (PageID.55.) The ALJ also found that Plaintiff's muscle aches and pains were not a severe impairment. (PageID.55.) Although Plaintiff was diagnosed with fibromyalgia, the ALJ found that Plaintiff was diagnosed in 2015 and did not meet the duration requirement in 20 C.F.R. § 404.1509. (PageID.55.) Moreover, the ALJ found that Plaintiff's medical examinations "show good musculoskeletal and neurologic function." (PageID.55.)

At step three, the ALJ determined that Plaintiff's impairments or a combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. (PageID.55.) The ALJ made this determination after comparing Plaintiff's back and neck injuries to the criteria listed under 1.04, and Plaintiff's sternoclavicular injuries to the criteria listed under 1.02. (PageID.55.)

At step four, the ALJ determined Plaintiff has the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional limitations of: "no climbing of ladders, ropes or scaffolds, only frequent overhead reaching with the right upper extremity, must avoid moderate exposure to the use of moving machinery and unprotected heights, and allow off task 10% of the workday in addition to regular

5

breaks." (PageID.55.) This determination was based on a thorough review of Plaintiff's medical records. Relying on Plaintiff's x-rays and MRIs, as well as, medical reports from Plaintiff's shoulder specialist and rehabilitation specialist, the ALJ found that Plaintiff suffered from degenerative processes of the neck and back, and a sternoclavicular injury. (PageID.56-59.) The ALJ also found that Plaintiff was more active than he alleged in his function reports and his testimony at the hearing. (PageID.59-60.) The ALJ noted that some of the medical records indicated that Plaintiff is capable of performing some forms of work but that he did not want to work a "desk job." (PageID.60.) Finally, the ALJ explained that he afforded little weight to some of the medical records because the records were vague and/or largely inconsistent with Plaintiff's other medical records. (PageID.60-62.)

At step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (PageID.63.) The ALJ relied on the vocational expert's testimony that Plaintiff could perform light work jobs including: lobby attendant (87,000 positions); cafeteria attendant (225,000 positions); and machine tender (168,000 positions). (PageID.63.) Therefore, the ALJ concluded that Plaintiff was not disabled during the time period from his alleged onset date through the date of the decision. (PageID.63.)

Although Plaintiff filed an initial brief and a supplemental brief, he does not advance any specific arguments challenging the Commissioner's final decision. Instead, Plaintiff broadly asserts that he has "significant" and "disabling" injuries that prevents him from returning to work or performing other work and attached twenty-five pages of medical records. The medical records that Plaintiff submitted can be separated into three categories: (1) medical records that predate the Commissioner's final decision but were not part of the certified administrative record (PageID.613, 615, 621-23, 625-628); (2) medical records that postdate the Commissioner's final

6

decision and were not part of the certified administrative record (PageID.603-604, 616); and (3) medical records that were part of the certified administrative record (PageID.605-612, 614, 624, 629-630).

With respect to the first two categories of medical records, Plaintiff is submitting new evidence and is essentially requesting a sentence six remand. Under sentence six of 42 U.S.C. § 405(g), the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." Thus, Plaintiff must show that (1) the evidence is new, (2) the evidence is material, and (3) there is good cause for the failure to incorporate such evidence into the record. First, "evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990)). Second, "evidence is 'material' only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 711 (6th Cir. 1988)). Third, "[a] claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* The Sixth Circuit has taken a "harder line" on the good cause test, and requires a claimant to present a valid reason for failing to obtain a medical evaluation prior to the hearing. *Oliver v. Sec'y of Health & Human Servs.,* 804 F.2d 964, 966 (6th Cir. 1986); *see also Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551, 554 (6th Cir. 1984). The party seeking remand bears the burden of showing that a remand is appropriate. *Foster,* 279 F.3d at 357.

7

Here, Plaintiff has failed to meet his burden to show that a sentence six remand is warranted. As described above, Plaintiff broadly asserts that he is disabled and attached several pages of medical records. He does not describe why the records that predated the Commissioner's decision were not included in the record. Thus, Plaintiff fails to establish that the predated records meet the "new" and "good cause" requirements to warrant a sentence six remand. In addition, although the medical records that postdated the Commissioner's decision are considered "new," Plaintiff does not meet the "good cause" requirement because he did not offer any reason for failing to obtain these medical evaluations prior to the date of the Commissioner's decision.

In addition, Plaintiff has failed to show that both the predated and postdated medical records are "material" and would have any reasonable probably of altering the Commissioner's decision. Several of the medical records are consistent with Plaintiff's prior medical records. For example, on September 8, 2016, a doctor determined that Plaintiff had degenerative disc disease and recommended that Plaintiff start a conditioning program. (PageID.603-04.) In addition, some of the medical records seem to actually contradict Plaintiff's argument that he is disabled. For example, Plaintiff submitted a June 2015 Michigan Department of Human Services medical assessment in which a medical consultant determined that Plaintiff was not disabled. (PageID.621.) The medical consultant found that Plaintiff could lift twenty pounds occasionally and ten pounds frequently in a workplace setting, which is consistent with the Commissioner's decision that Plaintiff can perform light work.

Further, with respect to the medical records that were already part of the administrative record, it is unclear what part of the Commissioner's decision that Plaintiff is challenging. Nonetheless, the Court finds that there is substantial evidence to support the Commissioner's decision that Plaintiff is not disabled. As discussed above, the ALJ correctly

applied the five-step analysis in this case. In addition, the ALJ's examination of Plaintiff's medical records is thorough and complete. Over the past several years, Plaintiff has routinely sought medical treatment for his injuries from various doctors including: primary providers, shoulder and rehabilitation specialists, and emergency room doctors. Based on these medical records, the ALJ found that Plaintiff suffered from degenerative processes of the neck and back, as well as a sternoclavicular injury. The ALJ stated:

> In sum, the medical records document the degenerative processes of the claimant's neck and back along with the sternoclavicular injury. The undersigned has accommodated these conductions by reducing the claimant to light work except no climbing of ladders, ropers or scaffolds, only frequent overhead reaching with the right upper extremity, must avoid moderate exposure to the use of moving machinery and unprotected heights, and allowed off task 10% of the workday in addition to regular breaks. The elimination of ladders, ropes or scaffolds and exposure to use of moving machinery and unprotected heights accounts for his chronic use of narcotics for pain control. The limitation on frequent overhead reaching with the right upper extremity considers any radicular symptoms associated with his neck pain. (ECF No. 7-7, PageID.420.) The additional time off task addresses his complaints of ongoing, significant pain and his use of chronic narcotic pain medication.

(ECF No. 7-2, PageID.59) (citation updated).

Plaintiff's injuries restrict his movements and undoubtedly cause him pain. However, as the ALJ detailed, the medical records suggest that Plaintiff overstates his pain and symptoms. For example, in January 2013, Plaintiff was examined by a rehabilitation specialist. (ECF No. 7-8, PageID.569.) The specialist noted that during a formal cervical spine examination, Plaintiff could "extend, flex or rotate the cervical spine right or left" ten degrees, but it was painful. However, the specialist also noted that when casually observed, Plaintiff appeared to rotate the cervical spine at least 30 degrees without any pain. Similarly, in December 2012, Plaintiff complained of a constant popping sensation in his left shoulder. (ECF No. 7-8, PageID.564.)

9

However, when he was examined by a shoulder specialist, Plaintiff could not reproduce the popping sensation.

Furthermore, the medical records indicate that Plaintiff is more active than he alleged at the hearing. In the decision, the ALJ summarized some of these records:

> [I]n November 2012, he indicated that his injury did not have an impact on his mobility, bathing, dressing, feeding/swallowing, toileting, grooming/hygiene, or communication abilities (ECF No. 7-8, PageID.543). He reported to his treating provider in October 2013 that he was helping a friend with a trailer (ECF No. 7-7, PageID.445) and in November that he shingled a roof and had been getting firewood ready for winter (ECF No. 7-7, PageID.442). In June 2014, he told his treating provider that he was performing masonry work. He indicated he was letting others do the heavy lifting (ECF No. 7-7, PageID.438). In February 2015, he told his primary care provider that he primarily heated his house with wood and, while someone else splits his wood for him, he was generally able to carry the wood in to his house (ECF No. 7-7, PageID.475). He also indicated that he would occasionally do the dishes, though his daughter will help with this task.

ECF No. 7-2, PageID.59-60. (citations updated).

In addition, the ALJ did not err when he afforded less weight to the medical opinions of some of Plaintiff's treating physicians. A treating physician's medical opinion is generally entitled to great weight when evaluating a patient's alleged disability. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001). The ALJ must give controlling weight to a treating physician's medical opinion when the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004); *Buxton,* 246 F.3d at 773. When an ALJ decides to not give a treating physician's opinion controlling weight, the ALJ must provide "good reasons" for doing so. *Gayheart,* 710 F.3d at 376. The ALJ

must ascertain the proper weight to afford a medical opinion by considering the following factors: "the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; [and] the specialization of the physician." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 242 (6th Cir. 2007); *see also* 20 C.F.R. § 404.1527(c). However, "an exhaustive factor-by-factor analysis" is not required. *See Francis v. Comm'r of Soc. Sec.,* 414 Fed. App'x. 802, 804 (6th Cir. 2011).

Here, the ALJ gave a thorough, well-reasoned, and complete explanation for the weight he afforded the medical opinions of Plaintiff's treating physicians. First, the ALJ gave little weight to Dr. Christopher Dehlin's medical opinion that Plaintiff could work four hours per day and required two days off per month due to Plaintiff's physical limitations. The ALJ explained:

> Dr. Dehlin observed and examined the claimant over the course of time, but his assessment is at odds with the medical evidence of record. As to the standing/walking, imaging studies show degenerative process of the spine, but the claimant generally walks with a normal gait and exhibits no deficits in lower extremity musculoskeletal or neurologic function that could contribute to such significant standing/walking limitations (ECF No. 7-7, PageID.389-400, 412-446, 448-501.) As to lifting, the shoulder specialist could not appreciate the "popping" or instability the claimant was reporting (ECF No. 7-8, PageID.564) and examination otherwise generally show normal strength, bulk and tone in the muscles of extremities; intact sensation; 2+ reflexes through absent ankle jerks at times; and, normal coordination (ECF No. 7-7, PageID.436-446, 448-501.) Regarding the claimant's sitting capacity, he has generally been noted to be seated comfortably in the examination chair (ECF No. 7-7, PageID.389-400.) In terms of the claimant's attention/concentration, persistence or pace, and ability to deal with work stress, examination have produced no evidence of ongoing cognitive deficits that would require significant limitations in these areas (ECF No. 7-7, PageID.389-400, 448-491; ECF No. 7-8, PageID.504-551.) The undersigned allowed for additional time off task in response to the claimant's partially credible subjective pain complaints. As to Dr. Dehlin's indication that the claimant could only work for four hours a day, it is not in keeping with the above

11

> cited evidence reflecting relatively good function on examination in a setting of possible symptom amplification and symptoms of an undetermined etiology (ECF No. 7-8, PageID.504-551.) Finally, Dr. Dehlin's allowance for additional absences per month is speculative. The record does not include frequent no shows or cancelations that would give rise to an opinion that the claimant is not capable of meeting his obligations.

ECF No. 7-2, PageID.60. (citations updated).

Relying on similar reasons, the ALJ gave little weight to Dr. J. Bryan Dixon's March 2014 opinion that Plaintiff could not return to work because he needed "significant modifications" to accommodate his shoulder and neck pain. (ECF No. 7-2, PageID.61.) Again, the ALJ found that Dr. Dixon's opinion was contrary to the majority of Plaintiff's medical records. The ALJ also noted that the opinion was vague because it failed to identity or define the meaning of "significant modifications."

Next, the ALJ gave little weight to Dr. Jonathan Robertson's medical opinion that Plaintiff could work only two hours per day and required four days off per month because it was also contrary to the majority of Plaintiff's medical records. (ECF No. 7-2, PageID.61.) However, the ALJ afforded some weight to Dr. Robertson's opinion that Plaintiff could lift ten pounds and occasionally lift twenty pounds, which is consistent with the ability to perform light work.

In addition, the ALJ gave some weight to pain management provider, Dr. Mansour Milk's medical opinion that Plaintiff should be careful with overhead lifting and avoid any strenuous activity involving his upper extremities. (ECF No. 7-2, PageID.61-62.) The ALJ noted that Dr. Milky "did not preclude overhead lifting, he simply instructed the claimant to be careful with it and the limitation to light work allows for this." (PageID.62.)

Lastly, the ALJ gave little weight to Shoulder Specialist Dr. Jason Doppelt's December 2012 opinion that Plaintiff could not continue working. (ECF No. 7-2, PageID.62.)

The ALJ reasoned that Dr. Doppelt did not appear to have the same opinion after he examined Plaintiff for a second time shortly thereafter.

In sum, this Court finds that there is substantial evidence to support the Commissioner's decision that Plaintiff is not disabled, as defined by the Social Security Administration.

Accordingly, the decision of the Commissioner is AFFIRMED and Plaintiff's request for relief is DENIED.

Dated: May 18, 2017

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE